IRVING, J.,
for the Court.
¶ 1. Katina Quinn was convicted in the Circuit Court of Marion County of armed robbery and conspiracy to commit armed robbery. The trial judge sentenced her to twenty-five years for the armed robbery conviction and five years for the conspiracy to commit armed robbery conviction in the custody of the Mississippi Department of Corrections and denied Quinn’s post-trial motion for a new trial. Feeling aggrieved, Quinn appeals and argues that the trial court erred in refusing to grant a peremptory instruction, in overruling her motion for a JNOV and for a new trial, in projecting itself in the trial and in coaching the prosecution, and in admitting hearsay testimony. Quinn also argues that the State committed prosecutorial misconduct by attempting to elicit testimony in violation of an order prohibiting such and that the cumulative effect of the errors committed prevented her from receiving a fair trial.
¶ 2. We find no merit in these arguments; therefore, this Court affirms the trial court’s judgment.
PACTS
¶ 3. Two men entered Columbia Cash in Columbia, Mississippi and robbed the store at gun point of $40,000. Jane Polk, owner of Columbia Cash, and her daughter were in the store at the time of the robbery. Shortly after the robbery, detectives of the Columbia Police Department (CPD) questioned Jane and her daughter. The women were able to provide a description of the two robbers including their race, the clothing worn, weapons used, and the direction of travel in making their escape.
*1035 ¶ 4. During an investigation of the areas surrounding Columbia Cash, Detective Albert Preston came into contact with Donel-lo Foxworth. Foxworth owned a car wash behind Columbia Cash. Foxworth informed Preston that around nine o’clock in the morning, he observed a gray four-door Nissan with custom wheels stop in the front of his car wash. Foxworth saw three passengers in the Nissan, two males and one female who served as the driver. Fox-worth stated that the driver parked the Nissan and that the two males exited the car but that he could not see where they went. The driver then left the area but returned between 10:00 a.m. and 10:30 a.m. At this time, the two males returned to the Nissan, and all three occupants left.
¶ 5. Detective Preston also interviewed Stephen Polk, son of the victim Jane Polk, on the day of the robbery. Stephen informed Detective Preston that on the morning of the robbery at around 8:30 a.m., a tan Ford Taurus with three occupants, two males and one female stopped in front of Columbia Cash. One of the male passengers asked Stephen what time Columbia Cash opened for business.
¶ 6. Within the week following the robbery, Detective Preston was contacted by Jane. Jane informed Detective Preston that she received an anonymous call from a person who claimed to have information regarding the robbery. Jane told Detective Preston that the anonymous caller was to call back later that day. The anonymous caller did call back, and at this time Detective Preston was able to determine that the information that the caller had was credible.[1] After the phone call, Detective Preston contacted the Gautier Police Department (GPD) concerning three names that he received from the caller.
¶ 7. As a result of the anonymous call and contact with the GPD, Detective Preston questioned Porter Thomas. In a written statement, Thomas stated that he had nothing to do with the Columbia Cash robbery but that Ellis Brister, Howard Owens, and Katina Quinn were the perpetrators. Other pertinent facts will be related during the discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Sufficiency and Weight of the Evidence

¶ 8. Quinn requested a peremptory instruction when trial evidence was concluded. Her post-trial “motion to set aside the verdict is essentially, and therefore is treated as, a motion for judgment notwithstanding the verdict.” McClain v. State, 625 So.2d 774, 778 (Miss.1993). The two challenges by Quinn (request for peremptory instruction and motion for JNOV) challenge the legal sufficiency of the evidence. “Since each requires consideration of the evidence before the [trial] court when made, [an appellate] [c]ourt properly reviews the ruling on the last occasion the challenge was made in the trial court.” Id. “This occurred when the trial court overruled Quinn’s motion for JNOV.” Id.
In appeals from an overruled motion for JNOV the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Quinn’s] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to re *1036 verse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Id. (internal citations omitted).
¶ 9. Quinn argues that no reasonable fair-minded juror could have found her guilty of armed robbery and conspiracy to commit armed robbery. Precisely, Quinn maintains that the State failed to present sufficient evidence to prove that she planned, aided, abetted or assisted in the robbery of Columbia Cash.
¶ 10. Conspiracy is defined in Mississippi Code Annotated section 97-1-1 which provides that the crime of conspiracy is committed when “two or more persons conspire either to commit a crime; or ... to accomplish any unlawful purpose, or a lawful purpose by any unlawful means.” Miss.Code Ann. § 97-1-1 (Rev.2000). See also Applewhite v. State, 753 So.2d 1039 (Miss.2000); Clayton v. State, 582 So.2d 1019 (Miss.1991); Griffin v. State, 480 So.2d 1124 (Miss.1985). “For there to be a conspiracy, there must be a recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purposes.” Harris v. State, 731 So.2d 1125, 1132 (¶ 42) (Miss.1999). A “conspiracy agreement need not be formal or express, but it may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators.” Id. (quoting Franklin v. State, 676 So.2d 287, 288 (Miss.1996)). “Furthermore, the existence of a conspiracy, and a defendant’s membership in it, may be proved entirely by circumstantial evidence.” Id.
¶ 11. The record reflects that there was ample credible evidence to support Quinn’s convictions. The most pertinent evidence is the testimony of Owens that he, along with Quinn and Brister, planned to rob Columbia Cash. Owens verified that the trio rode in Quinn’s step-brother’s car, a gold Nissan Stanza, from Gautier to Columbia, that Quinn was the get-away driver, and that after the robbery, the bounty was split between himself, Brister, and Quinn.
¶ 12. Quinn attacks Owens’s credibility by asserting that he is a convicted felon who is also her ex-lover. She states that Owens made a plea bargain in the present matter in regard to the armed robbery charges against him. Thus, she explains that Owens’s testimony regarding her involvement in the crime is uncorroborated. She insinuates that Owens is a witness that the State bought and paid for with his plea bargain. Consequently, Quinn argues that Owens’s testimony is biased.
¶ 13. The supreme court has found that the crime of conspiracy to commit robbery may be proven by an accomplice’s testimony that connects the defendant to the robbery. See McDowell v. State, 813 So.2d 694, 697(¶ 9) (Miss.2002). Moreover, despite Quinn’s attacks on Owens’s veracity, matters regarding the weight and credibility of a witness’s testimony are to be resolved by the jury. McClain, 625 So.2d at 778. We will not substitute our findings for that of a jury.
¶ 14. Despite our finding that Owens’s testimony alone was sufficient to support Quinn’s conviction, we also review the other evidence presented in this matter that supports the denial of Quinn’s JNOV. Fox-worth and Polk both testified that they saw a female driver and two male passengers on the morning of the robbery. Quinn contends that neither witness identified the car, that he saw that morning in question, as a gold Nissan Stanza with chrome rims. Therefore, she concludes *1037 that these witnesses’ testimony is unreliable.
¶ 15. As we have already observed, Foxworth testified that he saw a gray Nissan with custom wheels while Stephen stated that he saw a tan Ford Taurus. Quinn can take little comfort in the fact that Owens, Foxworth, and Stephen gave a different description of the getaway car. The supreme court has recognized that “seldom do witnesses agree upon every detail. Indeed, their failure to do so is often strong evidence each is trying to accurately portray the situation as he saw it, and that is to the credit, rather than the discredit of the witnesses.” Noe v. State, 616 So.2d 298, 302 (Miss.1993) (citing Manning v. State, 188 Miss. 393, 398, 195 So. 319, 320 (1940)). “The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity.” Id. (quoting Jones v. State, 381 So.2d 983, 989 (Miss.1980)). Moreover, both Foxworth and Stephen identified Quinn in a photographic line-up as the female driver that they saw on the morning of the robbery.
¶ 16. Quinn also attacks Thomas’s testimony. Shortly after the robbery, Thomas gave a written statement to the police that Quinn confessed to him her involvement in the robbery. During the trial, Thomas testified to facts contrary to his previous statement to police. While on cross-examination, Thomas explained that his previous statement, implicating Quinn, was not freely and voluntarily given. Despite Thomas’s contention, no other proof was provided to verify the involuntary nature of his written statement. The only evidence regarding the involuntary nature of Thomas’s written statement comes from Thomas himself. Once again, we emphasize that the jury, as the trier of fact, determines witness credibility, and we will not second guess it. McClain, 625 So.2d at 778. Moreover, Thomas’s testimony was not the only evidence placed before the jury in support of Quinn’s guilt. Accordingly, the trial judge did not err in denying Quinn’s motion for a peremptory instruction and JNOV.
¶ 17. Next we review the trial court’s decision to deny Quinn’s motion for a new trial.
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb 'it on appeal. Thus, the scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict.
Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 18. As we have previously stated, there was ample, credible evidence to support Quinn’s conviction. However, she contends that the State’s evidence was not only insufficient but lacked any weight as well. Quinn points out that she presented the testimony of Brister, her boyfriend, who testified that she did not plan or help execute the robbery. Moreover, Quinn explains that Brister’s testimony carries weight because he testified that his previous statements in which he implicated Quinn were false. Brister testified at trial that he had lied previously because he was mad at Quinn because he had learned of her infidelity with Owens. Moreover, Quinn emphasizes that the State was unable to impeach her alibi witness, Kevin Beavers.
*1038 ¶ 19. We find Quinn’s allegations lack merit. This Court must accept as true the evidence which supports the verdict. Herring, 691 So.2d at 957. The evidence that supports the verdict includes not only Owens’s testimony but that of Foxworth and Stephen Polk. Quinn asks us to ignore Owens’s testimony because he is biased but the same could be said for her boyfriend, Brister. Furthermore, we repeat that matters regarding the weight and credibility of a witness’s testimony are to be resolved by the jury. McClain, 625 So.2d at 778. Following the above stated standard, we find that the trial court properly denied Quinn’s motion for a new trial.

2. Fair and Impartial Trial

¶20. Quinn’s next issue alleges that the trial court impermissibly interjected itself into the trial by making comments on the testimony of certain witnesses, by coaching the State as to the proper questions to ask, and by making biased rulings in favor of the State when the defense objected to questions posed by the State. Quinn maintains that the trial court’s partiality in favor of the State prohibited her from receiving a fair trial.
¶ 21. We have carefully reviewed each of the twenty-four instances in the record which Quinn alleges that the trial judge’s action resulted in a denial of her constitutional right to a fair trial. Several of the instances, where Quinn argues bias occurred, concern objections that she made to Thomas’s written statement. Other instances involve general objections during the course of the trial and the trial judge’s ruling thereon.
¶ 22. An appellate court “will not hesitate to reverse where the trial judge displays partiality, becomes an advocate, or, in any significant way, conveys to the jury the impression that he has sided with the prosecution.” Jones v. State, 669 So.2d 1383, 1387 (Miss.1995) (quoting Layne v. State, 542 So.2d 237, 242 (Miss.1989)). In our perusal of the record, we noted that occasionally the trial court, for the purpose of clarity, rephrased a question asked by the State. However, we do not interpret the judge’s action as an act of partiality or a deliberate attempt to influence the jury. We find no merit in this allegation of error.

S. Admittance of Hearsay

¶23. Quinn next argues that the trial court erred in admitting hearsay testimony. Specifically, Quinn objects to the testimony of Detective Preston. During Thomas’s testimony, he was declared a hostile witness because he did not answer questions in the same manner as he had answered previously. Particularly, Thomas denied any conversation between Quinn and himself regarding her involvement in the robbery as the driver of the get-away car. He also denied certain facts contained in a written statement which he gave to police regarding Quinn’s bragging about her involvement in the robbery.
¶ 24. After Thomas’s denial of his previous statements, the State called Detective Preston to the stand. Detective Preston had interviewed Thomas concerning the robbery. Detective Preston testified as to the identity of the culprits as related to him by Thomas. Quinn objected to Detective Preston’s testimony, but the trial court overruled the objection. Quinn claims that the trial court erred in allowing Detective Preston’s testimony because it prejudiced her.
¶25. The standard of review for this Court regarding the admissibility of evidence is abuse of discretion, and reversal may be had only where that discretion has been abused. Johnston v. State, 567 So.2d 237, 238 (Miss.1990). Unless the trial judge’s discretion is so abused as to be *1039 prejudicial to the accused, an appellate court will not reverse. Shearer v. State, 423 So.2d 824, 826 (Miss.1983). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. Johnston, 567 So.2d at 238.
¶ 26. The testimony of Detective Preston was clearly admissible, as it was for impeachment purposes. Impeachment tests the believability of a witness on any subject, and the witness may be impeached by showing that he has given a prior inconsistent statement. Lanier v. State, 533 So.2d 473, 487-88 (Miss.1988). Prior inconsistent statements are admissible for impeachment purposes but are not admissible as substantive evidence. Moffett v. State, 456 So.2d 714, 719 (Miss.1984). There is no merit to this allegation of error. Therefore, we affirm the trial judge’s decision to allow the impeachment testimony of Detective Preston.

L Prosecutorial Misconduct

¶ 27. Quinn’s next contention is that the State committed prosecutorial misconduct when it attempted to elicit testimony in direct violation of the trial court’s ruling of a defense motion in limine. Specifically, Quinn argues that she requested the trial court to prohibit the State from mentioning the amount of money found on her person at the time of her arrest. The trial court found that the fact that Quinn was arrested with Brister with $2,000 on her person was more prejudicial than probative, for there was no connection between Quinn, the money, and the robbery. Quinn also requested that the trial court prevent the State from eliciting testimony as to the substance of the conversation between Detective Preston and the anonymous caller who gave him information regarding the robbery. The trial court ruled that the State could show that there was an anonymous call and that, based on that call, what action the CPD undertook. However, the State was prohibited from eliciting testimony as to the statements made by the anonymous caller.
¶ 28. The State did in fact violate the motion in limine regarding the amount of money Quinn had on her person by specifically questioning Brister about the matter. However, the record is devoid of any objection by Quinn when such question was asked of Brister. Therefore we find that an issue that is not properly brought to the attention of the trial court by appropriate timely objection is waived. Carr v. State, 655 So.2d 824, 832 (Miss.1995). The supreme court has repeatedly held that “if no contemporaneous objection is made, the error, if any, is waived.” Id.
¶ 29. Additionally, Quinn argues that the testimony elicited from Detective Preston regarding the anonymous caller was in violation of the motion in limine, but the record does not support this allegation. A bench conference on Quinn’s continuing objection, regarding the questions posed by the State, reveals the following:
MS. SONES: Did you receive information from this source [anonymous call] that led you [Preston] to continue your investigation as to the identity of the individuals that you would be looking for?
MR. FARRIS: Your Honor, I’m going to ask that a continuing objection be entered into the record on this line of questioning.
THE COURT: All right. Go ahead
PRESTON: Yes, I did.
MS. SONES: And based on the information that you received from this anonymous source did you, in fact look for three individuals?
MR. FARRIS: Your Honor, may we approach?
*1040 THE COURT: Yes, sir.
(BENCH CONFERENCE AS FOLLOWS)
MR. FARRIS: Your Honor, Ms. Sones is repeatedly getting into the substance of this conversation.
THE COURT: What substance ?
MR. FARRIS: Your Honor, the substance of the fact that they whether males, females, who committed the armed robbery. The information—
THE COURT: She can’t elicit names from him or anything like that. If she just let him testify what he did without the questions then, you know, the substance won’t be divulged. And that’s been the ruling.
[[Image here]]
MS. SONES: Detective Preston, after this call on March the 9th did you, in fact—
THE COURT: Just ask him what he did. That would simplify things. What happened after that?
¶ 30. From our examination of the record, we find that the trial judge did not allow the State to extract testimony in violation of his ruling that the substance of what the anonymous caller related would not be admissible. Moreover, the trial court listened to Quinn’s objections regarding the testimony of Detective Preston and found that her objections lacked merit. Detective Preston was allowed to testify not to the statements of the anonymous call but only to what actions he took after receipt of such call.

5. Cumulative Effect of Errors

¶ 31. Quinn’s last argument is that the several errors committed by the trial court had a cumulative prejudicial effect and prevented her from receiving a fundamentally fair trial. In order for there to be a prejudicial cumulative effect, there first must be some errors singularly committed and bearing some small degree of prejudice. We have found no such errors. Therefore, a reasonable deduction is that there can be no cumulative prejudicial effect. This allegation of error is without merit.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY OF CONVICTION OF COUNT I, ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE YEARS WITHOUT POSSIBILITY OF PAROLE AND COUNT II, CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FIVE YEARS, WITH TWO YEARS SUSPENDED ON POST-RELEASE SUPERVISION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. The caller knew facts relating to the robbery which had not been released to the media and which only the perpetrator or someone close to the crime would have known.