KING, C.J.,
 

 for the Court:
 

 ¶ 1. Patrick Franklin was convicted in the Circuit Court of Tunica County for the murder of Derrick Taylor and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Franklin appeals raising six issues:
 

 I. Whether the circuit court erred by denying his motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial;
 

 II. Whether the circuit court erred by overruling defense counsel’s objection to the prosecutor’s impeachment of Misty Boling with a prior inconsistent statement;
 

 III. Whether the circuit court erred by not granting Franklin’s motion for a new trial after Derrick Hughes had recanted his trial testimony;
 

 IV. Whether the circuit court erred by failing to instruct the jury that a prior inconsistent statement is only admissible for impeachment purposes;
 

 V. Whether the self-defense instructions were improper statements of the law; or, alternatively, whether defense counsel erred by failing to object to the jury instructions; and
 

 VI. Whether the prosecutor made improper comments during his closing statement.
 

 Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Taylor was killed on May 20, 2006. The following trial testimony reveals the details of that fatal night.
 

 A. Misty Boling
 

 ¶ 3. On May 20, 2006, Misty Boling had a barbeque at her home. Franklin and Taylor were both present. Boling testified that everyone was having a good time, drinking and partying. At some point, Taylor began playing in Boling’s hair, which she did not tolerate. Boling asked Taylor to stop, but he did not. Then, Franklin told Taylor to leave Boling along. Boling testified that she heard Franklin threaten Taylor, but she opined that the threat was made in jest. Boling testified that everyone continued to enjoy the party-
 

 ¶ 4. During Boling’s direct examination, the prosecutor asked Boling whether she gave a prior statement to the police, stating that Franklin’s threat appeared to be serious. Boling did not recall giving that statement. Then, the prosecutor also asked Boling if she knew the meaning of perjury. Defense counsel objected to this line of questioning, arguing that the prosecutor was not properly impeaching Boling. The trial court determined that Boling had become a hostile witness and allowed the prosecutor to impeach Boling with her pri-
 
 *1133
 
 or statement. However, during a bench conference, the trial court ruled that part of Boling’s prior statement, in which she stated that Franklin probably did kill Taylor, was speculative; and it was excluded.
 

 ¶ 5. After the bench conference, the State asked Boling to explain the statement that she had made to the police— that Franklin told her that he was going to kill Taylor. Boling testified that she did not remember that statement because it happened so long ago. Boling recalled that Franklin had threatened to kill Taylor; however, she maintained that the threat was made in jest.
 

 ¶ 6. During cross-examination, Boling testified that Franklin and Taylor were not involved in a physical altercation. Boling stated that after Franklin told Taylor to leave her alone, everyone continued to enjoy the party.
 

 B. Derrick Hughes
 

 ¶ 7. Derrick Hughes also attended Bol-ing’s barbeque. Hughes testified that he had seen Franklin and Taylor argue that night, and Franklin had left the barbeque after the argument. Hughes and Taylor stayed at the party a little while longer and left together, walking toward their respective homes. After arriving at his destination, Hughes saw Taylor walking toward his own home. Hughes heard a gunshot ten to fifteen minutes later.
 

 ¶ 8. The prosecutor asked Hughes whether he had seen Franklin with a gun earlier that evening, and Hughes responded that he did not recall seeing Franklin with a gun. The prosecutor presented Hughes with a prior statement that he had given to the police. In the prior statement, Hughes said that he had seen Franklin with a rifle earlier that night. Hughes did not recall making this statement. But Hughes stated that if it was in his statement to the police, then it must have been true.
 

 ¶ 9. During cross-examination, Hughes testified that he had given his statement to the police on May 24, 2006, a few days after the incident. Hughes testified that Taylor was intoxicated that night and had been in at least three altercations, one with a man named Lenario Davis (Lenario). Hughes testified that he did not see the fight between Taylor and Lenario. Hughes testified that Franklin and Taylor had simply argued that night, and they did not get into a physical fight. Hughes stated that he was not outside when the shooting of Taylor occurred. When asked about Franklin’s gun use, Hughes testified that Franklin had several guns, and Franklin often practiced shooting his guns at his own home.
 

 C. Immona Davis
 

 ¶ 10. Immona Davis (Immona), Lenar-io’s sister, also testified that Taylor was intoxicated that day, and Taylor had been involved in several altercations with various people. Immona also testified that she had seen Franklin shoot Taylor.
 

 ¶ 11. Immona stated that she was standing on the corner with a group of friends when Taylor had walked toward them and fired a gunshot into the air. Immona testified that everyone began running and screaming. Then, Immona saw Franklin carrying a rifle and walking down the street toward Taylor. Immona testified that Franklin said, “You all don’t have to run. I got this.” According to Immo-na, Franklin fired his rifle at Taylor, shooting Taylor in the chest. Immona saw Taylor get up and fire another round into the air. Afterward, Taylor walked back to his home and collapsed under the carport. The prosecutor asked Immona whether Lenario had shot Taylor, and she responded no. Immona testified that Lenario had
 
 *1134
 
 gone to their grandmother’s house after his altercation with Taylor and was not in the area when the shooting occurred.
 

 ¶ 12. During cross-examination, Immo-na testified that she did not see the altercation between Lenario and Taylor. But she stated that Lenario stopped by the corner and told her what had transpired between him and Taylor. Immona testified that Lenario was arrested that night as a suspect in Taylor’s death, and she had made a statement to the police that night. However, defense counsel presented a statement that Immona had given to the police, and it was dated May 24, 2006. Immona agreed that she loved her brother, and she did not want to see him in jail. But she maintained that Franklin had killed Taylor.
 

 D.Lenario Davis
 

 ¶ 13. Lenario testified that on the night of May 20, 2006, he and two friends were walking in the neighborhood when Taylor began following and cursing them. Lenar-io stated that after Taylor had pushed one of his friends in the chest, they continued walking away from Taylor. However, Taylor persisted. Lenario testified that Taylor then began walking toward him and swinging his arms. According to Lenario, he punched Taylor in the mouth in self-defense, knocking Taylor to the ground.
 

 ¶ 14. Lenario testified that Taylor had jumped up and ran to his house. Afraid that Taylor was going home to get a weapon, Lenario went to his grandmother’s house to hide. Lenario testified that he did not stop to talk to anyone on his way home. He stated that Brandi Sanders, a family friend, subsequently arrived at his grandmother’s house and took him to another home. Lenario testified that when Taylor was shot, he was with Sanders, Lenario also stated that he was later arrested by the police as a suspect in Taylor’s death.
 

 E. Odell Harris
 

 ¶ 15. Odell Harris, a resident of White Oak, testified for the defense. Harris testified that he saw Franklin at 7:00 p.m. Harris testified that he had heard the shooting at approximately 9:30 p.m., but he did not witness the shooting.
 

 F. Bridgett Davis
 

 ¶ 16. Bridgett Davis (Bridgett) is the mother of Immona and Lenario. Bridgett testified that she was at home reading when she heard gunshots. Then, Lenar-io’s cousin came to her house and informed her that Lenario had been in a fight with Taylor. Concerned for Lenario’s safety, Bridgett left to search for him. She found Lenario outside, talking to a group of people. Bridgett testified that she did not know whether Lenario was outside when the shooting had occurred. She also stated that she did not see Immona, and she did not look for Immona. In addition, Bridgett testified that Lenario was arrested that night as a suspect in Taylor’s death.
 

 G. The Investigation
 

 ¶ 17. Commander Eugene Bridges of the Tunica County Sheriffs Department responded to the scene. He found Taylor lying face down underneath his carport and holding a 12-gauge shotgun. Taylor was unresponsive. Commander Bridges contacted EMS. On the scene, EMS determined that Taylor had died of a single gunshot wound to the left side of his chest. Dr. Steven Hayne, the state’s pathologist, confirmed Taylor’s cause of death.
 

 ¶ 18. The police interviewed several witnesses on the scene, including Immona, Lenario, and Boling. Commander Bridges testified that Lenario was a suspect. But
 
 *1135
 
 after interviewing other witnesses, Lenario was released. Commander Bridges testified that he also interviewed Franklin and had a search warrant issued for Franklin’s residence. As a result, the police recovered four .22-caliber shell casings from Franklin’s yard, which were submitted to the Mississippi Crime Laboratory. The police also recovered a wooden butt of a rifle, which was found next to an abandoned house on Franklin’s street.
 

 ¶ 19. Lieutenant Shelia McKay of the Tunica County Sheriffs Department also testified. She responded to the scene at 11:30 p.m. Lieutenant McKay stated that she had performed a gunpowder-residue kit on Lenario at approximately 2:30 a.m. to 3:00 a.m. When asked whether Lenario had an opportunity to wash his hands before the gun-power residue kit was completed, Lieutenant McKay testified that she did not know.
 

 ¶ 20. Carl Fullilove, a forensic scientist for the Mississippi Crime Laboratory, examined the shell casings recovered in the investigation and determined that they were .22-caliber shell casings. He also examined the projectile recovered from Taylor’s gunshot wound and determined that it was a .22-caliber bullet. Fullilove testified that there was no way to determine whether the bullet that had killed Taylor came from one of the four shell casings found in Franklin’s yard, and there was no way to determine who had fired the bullet.
 

 ¶ 21. David Whitehead, a forensic scientist for the Mississippi Crime Laboratory, had examined Lenario’s gunpowder-residue kit. He testified that the results were negative. On cross-examination, Whitehead testified that gunpowder residue remains on a person’s hands for approximately four hours. He also testified that anything that person does, like washing their hands, can remove the gunpowder residue.
 

 H. Verdict and Post-Trial Proceedings
 

 ¶ 22. The jury found Franklin guilty of deprave-heart murder, and he was sentenced to life in the custody of the MDOC. Thereafter, Franklin filed a motion for a JNOV or, alternatively, a new trial. Principally, Franklin argued that he should receive a new trial because Hughes had recanted his trial testimony.
 

 ¶ 23. Hughes filed an affidavit, stating that the police had promised to help him with a pending arson charge if he would testify that he had seen Franklin carrying a rifle. According to Hughes, Commander Bridges made the offer to him on the day of the trial during lunch, and Hughes maintained that he had only testified because he thought that he would be “taken care of.”
 

 ¶ 24. During the hearing on the motion, Commander Bridges testified that he did not make any promises to Hughes. He further testified that because Hughes had a warrant out for his arrest, he had picked Hughes up to testify at Franklin’s trial and kept Hughes in custody. Commander Bridges testified that he had taken Hughes to lunch with him to keep an eye on him, and Commander Bridges admitted that he had paid for Hughes’s lunch. Ricky Isabel, a maintenance worker at the Tunica County Sheriffs Department, accompanied Commander Bridges and Hughes to lunch. Isabel testified that no one had made any promises to Hughes.
 

 ¶ 25. After hearing the arguments, the circuit court ruled that Hughes was not induced to testify and that there was no evidence proving that Hughes’s trial testimony was false. The circuit court noted that the police had previously sought Hughes to testify in Franklin’s trial, and
 
 *1136
 
 Hughes could not be found. The circuit court also noted that due to Hughes’s unreliability and the warrant out for his arrest, Commander Bridges did not want to let Hughes out of his sight. Thus, the circuit court determined that the lunch was not untoward. Accordingly, the circuit court denied Franklin’s motions. Aggrieved, Franklin timely filed his notice of appeal.
 

 ANALYSIS
 

 A. JNOV or New Trial
 

 ¶ 26. Franklin argues that the circuit court erred by denying his motion for a JNOV or, alternatively, a new trial. The State argues that the evidence was sufficient to support a verdict of guilt.
 

 1. Sufficiency of the Evidence
 

 ¶ 27. A motion for a directed verdict or a motion for a JNOV challenges the legal sufficiency of the evidence.
 
 See Bush v. State,
 
 895 So.2d 886, 843 (¶ 16) (Miss.2005). When ruling on a motion for a directed verdict or a motion for a JNOV, the circuit court must view all of the credible evidence consistent with the defendant’s guilt in the light most favorable to the State.
 
 Id.
 
 at (¶ 17). This Court will not disturb the circuit court’s ruling if “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ”
 
 Id.
 
 at (¶ 16) (quoting
 
 Carr v. State,
 
 208 So.2d 886, 889 (Miss.1968)). Thus, the Court must determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (citation omitted).
 

 ¶ 28. Franklin was charged with depraved-heart murder under Mississippi Code Annotated section 97 — 3—19(1) (b) (Rev.2006), which provides that:
 

 (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
 

 (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual[.]
 

 Franklin argues that the State was required to prove that he had killed Taylor and that it was not done in self-defense. Franklin also contends that the evidence shows that he killed Taylor in self-defense; thus, the evidence is not sufficient to support his conviction.
 

 ¶ 29. Once the defendant claims self-defense, the State bears the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense.
 
 McIntosh v. State,
 
 749 So.2d 1235, 1240 (¶ 17) (Miss.Ct.App.1999). “A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe he was in danger of imminent death or serious bodily harm.”
 
 Livingston v. State,
 
 943 So.2d 66, 71 (¶ 13) (Miss.Ct.App.2006). Also, a homicide may be justifiable if found to be done in the defense of others.
 
 See
 
 Miss. Code Ann. § 97-3-15(1)© (Rev.2006). Thus, the question of whether a defendant acted in self-defense or in defense of others is a question for the jury to resolve.
 
 White v. State,
 
 976 So.2d 415, 420 (¶23) (Miss.Ct.App.2008) (citing
 
 Dubose v. State,
 
 919 So.2d 5, 7 (¶ 11) (Miss.2005)).
 

 ¶ 30. The State argues that evidence was presented to show that Franklin and Taylor had gotten into an altercation earli
 
 *1137
 
 er that evening, which resulted in gunfire. For instance, Boling had testified that Franklin had jokingly threatened Taylor earlier that evening. However, in a prior statement given to the police, Boling said that Franklin’s threat was serious. On the other hand, Franklin argues that evidence was presented to show that he had shot Taylor in self-defense and in defense of others. For instance, Immona had testified that Taylor had fired a gunshot in the air near a crowd of people. She testified that Franklin said: “You all don’t have to run. I got this.” Then, she stated that Franklin fired a gunshot at Taylor, hitting Taylor in the chest.
 

 ¶ 31. As the fact-finder, it is within the jury’s province to consider this evidence and determine whether or not Franklin shot Taylor in self-defense.
 
 Webster v. State,
 
 817 So.2d 515, 519 (¶ 14) (Miss.2002). “[The appellate court] has restricted authority to interfere in the province of the jury verdict.”
 
 Id.
 
 Based on the verdict, the jury resolved any conflicts in the evidence in favor of Franklin’s conviction. Viewing the evidence in the light most favorable to the State, we find that a rational juror could have found that the State had proved the essential elements of the crime beyond a reasonable doubt. This issue is without merit.
 

 2. Weight of the Evidence
 

 ¶ 32. Franklin argues that the verdict is against the overwhelming weight of the evidence. A motion for a new trial challenges the weight of the evidence.
 
 Bush,
 
 895 So.2d at 844 (¶ 18). We will not disturb the circuit court’s denial of a motion for a new trial unless “[the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 

 ¶ 33. Franklin contends that the evidence shows that he acted in self-defense. As previously mentioned, whether Franklin acted in reasonable self-defense was a question for the jury to decide.
 
 White,
 
 976 So.2d at 420 (¶ 23). The jury resolved this issue in favor of Franklin’s conviction. We find that the verdict is not against the overwhelming weight of the evidence.
 

 ¶ 34. In the alternative, Franklin argues that the evidence failed to support a finding that he was the shooter. Specifically, Franklin argues that Immona, Le-nario’s sister, was the only person who testified that he had shot Taylor, and Im-mona was a biased witness because her brother was also a suspect in Taylor’s murder. Franklin also argues that Immo-na’s, Lenario’s, and Bridgett’s testimonies were contradictory and unreliable. There was some inconsistency in Immona’s, Le-nario’s, and Bridgett’s testimonies regarding if or when Lenario had informed Im-mona about his altercation with Taylor. Franklin’s argument attacks the credibility of the witnesses. As previously stated: “It is up to a jury to determine the credibility of witnesses and resolve conflicts in the evidence.”
 
 Jenkins v. State,
 
 995 So.2d 839, 843 (¶ 13) (Miss.Ct.App.2008).
 

 ¶ 35. Based on the verdict, the jury resolved any conflicts in the evidence in favor of Franklin’s conviction. We do not find that the verdict is against the overwhelming weight of the evidence. Accordingly, we will not disturb the judgment of conviction. This argument is without merit.
 

 B. Boling’s Prior Inconsistent Statement
 

 ¶ 36. Franklin argues that the circuit court erred by allowing Boling’s prior inconsistent statement to be used as substantive evidence. The State argues that Boling’s statement was properly used for impeachment purposes.
 

 
 *1138
 
 ¶ 37. A witness may be impeached by the party calling him or her if that party shows that he or she was surprised by the witness’s testimony and that the witness has become hostile.
 
 See Hickson v. State,
 
 512 So.2d 1, 3 (Miss.1987). The prior inconsistent statement may be admitted for impeachment purposes only; it cannot be used as substantive evidence.
 
 Quinn v. State,
 
 873 So.2d 1033, 1039 (¶ 26) (Miss.Ct.App.2003).
 

 ¶ 38. During the trial, Boling testified that Franklin’s threat to Taylor was made in jest. The prosecutor asked Boling whether she recalled telling him that Franklin’s threat was serious. The State then began to impeach Boling with a prior statement that she had given to the police, stating that Franklin’s threat to Taylor was serious. The defense objected to the State’s impeachment of Boling arguing that: (1) the prosecutor questioned Boling about the statement without first letting her refresh her memory; (2) the prosecutor asked Boling if she knew what perjury meant, attempting to scare her; and (3) Boling’s statement that Franklin probably did kill Taylor was based on speculation. The circuit court allowed the prosecutor to help Boling refresh her memory. Boling continued to maintain that she did not recall telling the prosecutor that Franklin’s threat was serious. The circuit court ruled that Boling had become a hostile witness and allowed the State to impeach her. However, during a bench conference, the circuit court ruled that part of Boling’s prior statement in which she opined that Franklin probably did kill Taylor was speculative, and it was excluded. The prosecutor was admonished to rephrase the question.
 

 ¶ 39. With the circuit court’s assistance, the State asked Boling to explain what she meant in her statement to the police when she said that Franklin told her that he was going to kill Taylor. Boling was allowed to see her statement to refresh her memory. Then, she testified that she did not remember what she said in her statement because it had happened a long time ago. Boling recalled that Franklin threatened to kill Taylor; however, she insisted that the threat was made in jest.
 

 ¶ 40. Based on our review of the record, we find that the prior inconsistent statement was not used as substantive evidence of Franklin’s guilt. The State showed that it was surprised by Boling’s testimony, and the circuit court ruled that Boling had become a hostile witness. The circuit court properly excluded the speculative part of Boling’s prior statement in which she said that Franklin probably killed Taylor. Thereafter, the State properly used Boling’s prior statement to impeach Boling regarding her opinion as to the nature of Franklin’s threat. Accordingly, we find that the circuit court did not err by allowing the State to impeach Boling. This argument is without merit.
 

 C. Hughes’s Recanted Trial Testimony
 

 ¶ 41. Franklin argues that the circuit court erred by not granting his motion for a new trial based on Hughes’s recanted testimony and evidence that the police made improper inducements to Hughes in exchange for his testimony. The State contends that the police did not make any improper inducements in exchange for Hughes’s testimony, and there is no evidence that Hughes’s trial testimony was dishonest.
 

 ¶ 42. In
 
 Walls v. State,
 
 735 So.2d 1010, 1011 (¶ 2) (Miss.1999), the Mississippi Supreme Court held that:
 

 A court will usually deny a new trial based on recanting testimony where it is not fully satisfied regarding the truthfulness of the testimony. The determina
 
 *1139
 
 tion should be left to the sound discretion of the trial court and should not be set aside unless clearly erroneous. Recanting testimony has been shown to be extremely unreliable and should be approached with suspicion.
 

 Id.
 
 (quoting
 
 Peeples v. State,
 
 218 So.2d 436, 439 (Miss.1969)). To warrant the grant of a new trial based on a witness’s recanted testimony, Franklin had to prove that: (1) “the recantation was material,” and (2) the evidence is such that the result would change if a new trial is granted
 
 Id.
 
 (citing
 
 Williams v. State,
 
 669 So.2d 44, 54 (Miss.1996)).
 

 ¶ 43. After Franklin’s trial, Hughes executed an affidavit, stating that the police had promised to help him with his pending arson charge if he would testify in Franklin’s case. According to Hughes, this promise was made during his lunch with Commander Bridges; in return, Hughes was supposed to testify that he saw Franklin with a rifle on the night of Taylor’s death. However, during the trial, Hughes testified that he
 
 did not
 
 see Franklin with a rifle on the night of Taylor’s death. The State impeached Hughes’s testimony with a prior statement that he had given to the police in which he stated that he had seen Franklin carrying a rifle earlier that evening.
 

 ¶ 44. During the hearing on the motion for a new trial, Commander Bridges testified that, at the time, there was a warrant out for Hughes’s arrest for arson. Thus, Hughes was taken into custody. Commander Bridges testified that previously, it had been difficult for the police to locate Hughes; and he thought that it was necessary to keep Hughes in his sight at all times, which is why he took Hughes to lunch. Commander Bridges and Isabel testified that no one had made any promises to Hughes. Based on this evidence, the circuit court had determined that no promises had been made to Hughes, and there was no evidence presented that Hughes’s trial testimony was dishonest.
 

 ¶ 45. Franklin argues that the police improperly induced Hughes to testify that he had seen Franklin with a rifle. However, Hughes testified at trial that he
 
 did not
 
 see Franklin with a rifle, which is in direct opposition to the alleged testimony that the police asked of him. Hughes’s testimony was impeached with a prior inconsistent statement, which was given to the police a few days after Taylor’s death. Thus, we hold that there is no recanted testimony to consider, and the evidence supports the circuit court’s ruling that Hughes did not receive any improper inducements from the police in exchange for his testimony. Accordingly, we hold that the circuit court did not abuse its discretion by denying Franklin’s motion for a new trial. This issue is without merit.
 

 D. Limiting Instruction
 

 ¶ 46. Franklin contends that the circuit court should have given a limiting instruction to the jury, stating that prior inconsistent statements could only be used for impeachment purposes and not as substantive evidence. Alternatively, Franklin argues that his trial counsel was ineffective for not requesting a limiting instruction to that effect. The State contends that the circuit court was not required to give a limiting instruction sua sponte.
 

 1. Sua Sponte
 

 ¶ 47. The State impeached its witnesses, Boling and Hughes, with their pri- or inconsistent statements. Boling’s impeached testimony concerned whether or not she thought Franklin’s threat against Taylor was a serious threat, and Hughes’s impeached testimony concerned whether or not he saw Franklin carrying a rifle on the day in question.
 

 
 *1140
 
 ¶ 48. As previously mentioned, a prior inconsistent statement may only be used for impeachment purposes and may not be considered as substantive evidence.
 
 Quinn,
 
 873 So.2d at 1039 (¶26). The State used Boling’s and Hughes’s prior inconsistent statements to impeach them. The actual statements were not admitted into evidence.
 

 ¶ 49. If Franklin wanted a limiting instruction concerning Boling’s and Hughes’s impeached testimony, he could have requested one. A limiting instruction may be provided to the jury at the request of the party affected.
 
 Moss v. State,
 
 977 So.2d 1201, 1212 (¶ 23) (Miss.Ct.App.2007) (citing M.R.E. 105). The circuit court may give a limiting instruction upon its own motion.
 
 See id.
 
 at (¶ 24). However, the circuit court “is not obligated to sua sponte give a limiting instruction....”
 
 Id.
 
 Franklin’s trial counsel did not request a limiting instruction regarding Boling’s and Hughes’s impeached testimony. “In the absence of such a request, a trial court cannot be held in error.”
 
 Id.
 
 at (¶ 23) (finding that the circuit court did not err by failing to provide the jury with a limiting instruction regarding the defendant’s prior convictions). Accordingly, we find that the circuit court did not err by failing to provide a limiting instruction regarding Boling’s and Hughes’s prior inconsistent statement. This argument is without merit.
 

 2. Ineffective Assistance of Counsel
 

 ¶ 50. Issues of ineffective assistance of counsel are generally not reviewed on direct appeal.
 
 Shumaker v. State,
 
 956 So.2d 1078, 1084 (¶ 10) (Miss.Ct.App.2007). The Court may consider the ineffective-assistance-of-counsel claim if: “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
 
 Id.
 
 (quoting
 
 Colenburg v. State,
 
 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999)).
 

 ¶ 51. Neither criterion has been satisfied in this case. Thus, we dismiss Franklin’s claim of ineffective assistance of counsel without prejudice so that he may raise his claim in a properly filed motion for post-conviction relief, if he so chooses.
 
 See id.
 
 at (¶ 11).
 

 E. Self-Defense Instruction
 

 ¶ 52. When reviewing a challenge to jury instructions, the instructions given must be viewed as a whole, and no one instruction should be reviewed in isolation.
 
 Richardson v. State,
 
 911 So.2d 1026, 1028 (¶ 7) (Miss.Ct.App.2005). Where the jury instructions given fairly announce the applicable law and create no injustice, no reversible error will be found.
 
 Id.
 

 ¶ 53. Franklin argues that there was plain error in the self-defense jury instructions, which requires reversal. In the alternative, Franklin argues that his trial counsel was ineffective for not objecting to the instructions. As previously stated, we dismiss Franklin’s ineffective-assistance-of-counsel claims without prejudice so that he may file them in a properly filed motion for post-conviction relief.
 
 Shumaker,
 
 956 So.2d 1078 at 1084 (¶ 11).
 

 1. Jury Instruction S-l
 

 ¶ 54. Franklin challenges three jury instructions: S-l, D-l, and S-6. First, Franklin argues that jury instruction S-l constitutes reversible error because it failed to require the State to prove that Franklin did not act in self-defense. Jury instruction S-l charged the jury that:
 

 If you find from the evidence in this case beyond a reasonable doubt that:
 

 
 *1141
 
 (1) on or about May 20, 2006, Derrick Taylor, was a living human being, and
 

 (2) the Defendant, Patrick Franklin, did unlawfully, willfully and feloniously act in a manner eminently [sic] dangerous to others and with a depraved heart, regardless of human life, kill and murder said Derrick Taylor by shooting him, and
 

 (3) said act resulted in the death of Derrick Taylor, whether or not the Defendant had any particular premeditated design to effect the death of Derrick Taylor
 

 then you shall find the Defendant, Patrick Franklin, guilty of murder.
 

 If the State has failed to prove any one or more of the above elements beyond a reasonable doubt then you shall find the Defendant not guilty.
 

 ¶ 55. Jury instruction S-l instructed the jury on the elements of depraved-heart murder, tracking the language of Mississippi Code Annotated section 97-3-19(l)(b). The Mississippi Supreme Court has held that “[w]here the instruction tracks the statutory language prescribing the elements of the crime, the Court finds it is permissible as adequately instructing the jury as to the elements of the crime.”
 
 Gray v. State,
 
 728 So.2d 36, 61 (¶ 115) (Miss.1998). Because Franklin raised self-defense, the State also had to prove that Franklin did not kill Taylor in necessary self-defense.
 
 Ables v. State,
 
 850 So.2d 172, 174 (¶ 6) (Miss.Ct.App.2003) (citing
 
 Heidel v. State,
 
 587 So.2d 835, 843 (Miss.1991)). Relying on
 
 Boyles v. State,
 
 223 So.2d 651, 655-56 (1969), Franklin argues that jury instruction S-1 is erroneous because the words “and not in necessary self-defense” were not included in the jury instruction, omitting a necessary element of the crime.
 

 ¶ 56. In
 
 Harris v. State,
 
 861 So.2d 1003, 1013-16 (¶¶ 19-31) (Miss.2003), the Mississippi Supreme Court addressed a similar argument and jury instruction. The jury in
 
 Harris
 
 was given a depraved-heart murder instruction for each defendant, which read:
 

 The Defendant, (name), has been charged in the indictment in this case with the crime of murder. If you find from the evidence in this case, beyond a reasonable doubt that the Defendant, (name), did on or about the 7th day of November, 1999, feloniously, willfully and unlawfully in Madison County, Mississippi,
 

 1. Engage in an act eminently dangerous to others, or aid and assist in an act eminently [sic] dangerous to others; and that,
 

 2. such act evinced a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, and that
 

 3. such act inflicted injuries to Ronnie Travis which caused his death, then you shall find the Defendant, (name), guilty of Murder as charged in the indictment.
 

 If the State has failed to prove any one or more of the above listed elements, beyond a reasonable doubt, then you shall find the Defendant not guilty of Murder.
 

 Id.
 
 at 1013 (¶ 19). The supreme court held that although the jury instruction did not include the language “without authority of law,” the term unlawfully, which is a synonym, is “an acceptable substitute for the phrase ‘without authority of law,’ specifically in the context of a depraved-heart murder instruction.”
 
 Id.
 
 at (¶ 20). Accordingly, the supreme court found that the issue was without merit.
 
 Id.
 

 ¶ 57. In addition, the supreme court found that the failure of the depraved-
 
 *1142
 
 heart murder instruction to include the phrase “not in necessary self-defense” was not reversible error where other jury instructions were given that properly instructed the jury on self-defense, one of which was specifically requested by the defendants.
 
 Id.
 
 at 1013-16 (¶¶ 21-80). The supreme court determined that: “If words and phrases with similar meaning are allowable for necessary phrases, such as ‘without authority of law,’ they are equally allowable for phrases such as ‘not in necessary self-defense.”
 
 Id.
 
 at 1015 (¶ 27). Accordingly, the supreme court held that:
 

 It was not error to give an instruction that omits the words “not in necessary self[-]defense” when charging depraved[-]heart murder when the Court also instructs the jury in a separate instruction that the killing would be justified if committed by the defendant in the lawful defense of his own person. The instructions, when read in their entirety, properly instructed the jury that a killing may not be murder, that the killing could be justified in self[-]defense, the factors that must be considered when deciding if the killing was in self[-]defense, and that the burden of proof is always on the State. Considering the instructions as a whole, this Court finds that the jury was properly instructed.
 

 Id.
 
 at 1015 (¶ 28).
 

 ¶ 58. In Franklin’s case, other jury instructions regarding Franklin’s theory of self-defense were given. For instance, jury instruction D-l, which was requested by Franklin, included the necessary elements of self-defense and specifically charged the jury that: “If, you, the jury finds that Patrick Franklin is justified in the killing of Derrick Taylor you will return a verdict of not guilty.” Also, jury instruction C-25 charged the jury, in pertinent part, that:
 

 [T]he Defendant in a criminal case has no burden of proof whatsoever. The State of Mississippi, on the other hand, must prove beyond a reasonable doubt that the Defendant committed the acts as alleged in the indictment.
 

 Jury instruction C-7 charged the jury that the State bore the burden of proof at all times:
 

 The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the. defendant guilty of every material element of the crime with which he/she is charged. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the defendant is guilty. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of the defendant’s guilty [sic] beyond a reasonable doubt. The defendant is not required to prove his/her innocence.
 

 Reviewing the jury instructions given as a whole, we find that the jury was properly instructed regarding the State’s burden to prove that Franklin did not act in self-defense.
 

 2, Jury Instruction D-l
 

 ¶ 59. Second, Franklin argues that jury instruction D-l erroneously shifted the burden of proof to the defendant. Jury instruction D-l provides that:
 

 The killing of a human being by the act, procurement or omission of another shall be justifiable when committed in the lawful defense of one’s own person or any other human being, where there shall be reasonable grounds to apprehend a design to commit a felony or to
 
 *1143
 
 do some great personal injury, and there shall be imminent danger of such design being accomplished. If, you, the jury, finds that Patrick Franklin is justified in the killing of Derrick Taylor you will return a verdict of not guilty.
 

 The record reveals that Franklin requested jury instruction D-l at trial. On appeal, “a defendant cannot complain of an instruction which he, not the State, requested.”
 
 Parks v. State,
 
 884 So.2d 738, 746 (¶ 26) (Miss.2004) (quoting
 
 Harris,
 
 861 So.2d at 1015 (¶ 24)). We hold that because Franklin, not the State, requested jury instruction D-l, Franklin may not now complain that the instruction was erroneous. This issue is without merit.
 

 3. Jury Instruction S-6
 

 ¶ 60. Last, Franklin argues that jury instruction S-6 is improper because it failed to inform the jury that: “the test [for self-defense) is not whether or not the jury believes Franklin’s actions were in fact reasonable, [but] whether a person in Franklin’s situation would have believed his actions were reasonable. “The State argues that jury instruction S-6 is a correct statement of the law, and a similar jury instruction was upheld in
 
 Ellis v. State,
 
 956 So.2d 1008, 1014 (¶ 12) (Miss.Ct.App.2007).
 

 ¶ 61. Jury instruction S-6 reads as follows:
 

 The Court instructs the jury that one who claims self-defense to his actions may not use excessive force to repel the attack, but may only use such force as is reasonably necessary under the circumstances. If you find from the evidence, beyond a reasonable doubt, that the Defendant, Patrick Franklin, caused bodily injury to Derrick Taylor by shooting him and that said shooting was a use of more force than was reasonably necessary under the circumstances of this case, then the defense of self-defense would not apply to this case.
 

 Jury instruction S-6 addresses the law on self-defense with regard to the reasonableness of the defendant’s actions. Under Mississippi law, “whether a defendant has ‘reasonable grounds’ to fear imminent death or serious bodily injury is governed by an objective criterion. The defendant is judged not according to his own particular mental frailties but by a ‘reasonable person’ standard.”
 
 Hart v. State,
 
 637 So.2d 1329, 1339 (Miss.1994). Accordingly, we find that jury instruction S-6 cited the appropriate standard regarding reasonableness. This issue is without merit.
 

 F. Prosecutorial Misconduct
 

 ¶ 62. Franklin argues that the prosecutor made several improper comments during his closing statement, which requires reversal based on the plain-error doctrine. The State argues that Franklin failed to object to any of these alleged improper comments at trial; thus, the issue is procedurally barred from review.
 

 ¶ 63. Franklin’s trial counsel did not object to any comments made by the prosecutor during his closing statement. Thus, this issue is procedurally barred from our review.
 
 Brown v. State,
 
 907 So.2d 336, 340 (¶ 12) (Miss.2005). Despite this procedural bar, we find that there is no merit to Franklin’s claims.
 

 ¶ 64. “Attorneys are granted wide latitude in making their closing arguments.”
 
 Mosely v. State,
 
 4 So.3d 1069, 1076 (¶ 17) (Miss.Ct.App.2009) (citing
 
 Holly v. State,
 
 716 So.2d 979, 988 (¶ 33) (Miss.1998)). When reviewing claims of prosecu-torial misconduct during closing statements, the Court must determine “whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the preju
 
 *1144
 
 dice so created.”
 
 McGowen v. State,
 
 859 So.2d 320, 346 (¶ 91) (Miss.2003).
 

 ¶ 65. Franklin challenges three comments made by the prosecutor. First, Franklin contends that the prosecutor suggested “that there were other witnesses who were not called who substantiated the prosecution’s theory,” by stating that:
 

 Then they went out and they talked to other witnesses. They found relatives. They found friends. They found unrelated people in the community, people who had been out there. They talked to everybody they could find and got statements from them. And you heard from some of those witnesses here.
 

 When read in context, this comment is merely a summary of the police’s investigation, which is allowed.
 
 Id.
 
 (finding that “[t]he purpose of a closing argument is to fairly sum up the evidence).” Thus, we find that this was not an improper comment.
 

 ¶ 66. Second, Franklin maintains that the prosecutor improperly vouched for Boling’s credibility. The challenged comment reads as follows:
 

 Who else did we here [sic] hear from? We heard Misty Boling, who told the truth in her statement when she didn’t know what was going happen, when she didn’t know she was going to be on that stand in front of him. And then she tried to back up. But that statement was down in writing. We know the defendant threatened Derrick Taylor and that she thought he meant it.
 

 In this statement, the prosecutor was comparing Boling’s trial testimony to her prior inconsistent statement. The law is clear that “[t]he prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts.”
 
 Id.
 
 (citations omitted). We hold that the prosecutor was not vouching for Boling’s credibility; instead, the prosecutor simply gave a summation of the evidence and inferred that Boling’s trial testimony was false. Accordingly, we find that this comment was not improper.
 

 ¶67. Last, Franklin argues that the prosecutor improperly commented on the defense’s failure to call witnesses and Franklin’s failure to testify, and the prosecutor improperly shifted the burden of proof to Franklin. The prosecutor made the following statement regarding Franklin: “[t]hey picked up Lenario Davis and the defendant. What did they do after that? After that, they grilled them both, to use the vernacular. They interviewed them multiple times, multiple officers, different ways, and recorded those statements.” We hold that this was not a comment on Franklin’s failure to testify, but a summation of the police’s investigation. Thus, it was not improper.
 

 1168. In another challenged comment, the prosecutor rhetorically asked' the jury “who put a gun in the defendant’s hand,” noting that Immona and Hughes testified that Franklin had a gun. Then, the prosecutor stated the following:
 

 Who else puts a gun in any other person’s hand, the gun that killed Deck Taylor. Who? What evidence? Where? When? How? Where are they? Nowhere. Nowhere. What evidence do you have to contradict the [Sjtate’s case?
 

 [[Image here]]
 

 We built our case out of bits and pieces, like this right here. And we built it and we stacked it and we put on witness after witness until we built it up and now we’ve handed it to you. And it’s up to the defense to knock it down. What have they given you to knock it down? Odell? Odell? The entire courtroom was in stitches when he got done testifying. He didn’t see anything. We don’t
 
 *1145
 
 know what he saw. He doesn’t know what he saw. That’s it.
 

 Then we put on Lenario Davis’s mother and we had a 20-minute conversation about whether or not she checked Le-nario for bullets or something.
 

 [[Image here]]
 

 This evidence is before you. Ask yourselves what is there that’s knocked it down. I would suggest to you — I would argue to you, ladies and gentlemen, that there is nothing, nothing. The State’s case stands unassailed, intact. It’s what you have.
 

 ¶ 69. Viewing the evidence in context, we hold that the prosecutor commented on Franklin’s failure to put on a successful defense, which is appropriate.
 
 See Cox v. State,
 
 849 So.2d 1257, 1270 (¶45) (Miss.2003). The prosecutor never commented that Franklin failed to call a particular witness or that Franklin failed to testify. Franklin’s theory of defense was that: (1) he did not shoot Taylor; and (2) if he did shoot Taylor, it was done in self-defense. The prosecutor pointed out at least two witnesses — Immona and Hughes — saw Franklin with a gun; Immona actually saw Franklin shoot Taylor; and no one testified that anyone besides Franklin had shot Taylor. Additionally, the prosecutor noted that the defense’s two witnesses — Odell Harris and Bridgett Davis — did not see anything. The circuit court properly instructed the jury regarding the State’s burden, and the prosecutor did not shift the burden of proof to Franklin in his closing argument. As previously stated, the State may properly comment on facts in evidence.
 
 McGowen,
 
 859 So.2d at 346 (¶ 91). Accordingly, we find that the prosecutor’s comments were not improper. This issue is without merit.
 

 ¶ 70. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF DEPRAVED-HEART MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.