# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01671-SCT

*ANTONIO McDOWELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/5/2000 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ANN H. LAMAR |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/28/2002 |
| MOTION FOR REHEARING FILED: | 3/12/2002; denied 4/18/2002 |
| MANDATE ISSUED: | 4/25/2002 |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. In March of 2000, Antonio McDowell (McDowell) and Deaigo Hill (Hill) were jointly indicted by the grand jury of Tallahatchie County, First Judicial District, on charges of conspiracy to commit robbery and capital murder by killing Bobbie J. Whitten while engaged in the commission of the crime of robbery. Hill pled guilty to simple murder and subsequently testified against McDowell. At the conclusion of trial, a jury convicted McDowell on both counts, and he was sentenced to serve consecutive sentences of five years for the conspiracy and life without parole for the capital murder. Following the denial of his post-trial motion for a new trial or in the alternative for a judgment notwithstanding the verdict, McDowell now appeals raising the following issues:

> **I. WHETHER THE TRIAL COURT ERRED IN DENYING PROPOSED JURY INSTRUCTIONS D-1 (PEREMPTORY INSTRUCTION), D-6 (SELF-DEFENSE) AND GIVING JURY INSTRUCTION C-10 (ELEMENTS OF ARMED ROBBERY).**
>
> **II. WHETHER THE TRIAL ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE AND IN THE ALTERNATIVE TO LIMIT INTRODUCTION OF PHOTOGRAPHIC EVIDENCE.**
>
> **III. WHETHER THE VERDICTS OF THE JURY OF GUILTY OF CONSPIRACY TO COMMIT ROBBERY AND CAPITAL MURDER ARE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

Concluding that all of McDowell's issues are without merit, we affirm.

## FACTS

¶2. The facts in this case are seriously in dispute. Hill freely admits to being an accomplice to McDowell during the robbery and murder of Bobbie J. Whitten, while McDowell asserts that he was never present at the Whitten's Store and had nothing to do with the robbery and shooting of Mr. Whitten.

¶3. According to Hill, on November 2, 1999, McDowell invited him to come to McDowell's home so they could go fishing. Once Hill arrived at McDowell's home, however, McDowell decided they should go hunting instead. Later that day, after hunting for rabbits with McDowell's .22 rifle, McDowell showed Hill a sawed-off .410 shotgun that he had put together and hidden in the ceiling. This shotgun was later determined to be the one used in the shooting death of Whitten. Hill spent that night at McDowell's house, and the next morning they dressed and prepared to go to school. While waiting for the bus, McDowell went back inside the house to retrieve a bigger coat. Once McDowell returned to the bus-stop, he stated that he did not feel like going to school, and he and Hill decided to skip school.

¶4. Hill further testified that while they sat across the road from the bus-stop and talked, McDowell suggested that they rob Whitten's Country Grocery Store, which was located approximately a mile from McDowell's house. McDowell then took a rope from a horse-shed across the street, planning for Hill to tie Whitten and to close the front door when they got to the store. McDowell hid the shotgun under his coat, down his pants leg and Hill had the rope in his pocket, and they walked to the store. When they arrived, McDowell entered first and Hill followed. McDowell pointed the shotgun at Whitten and ordered him to go outside with him. As Hill closed the front door, he heard a shot from the side door through which McDowell and Whitten had just exited. McDowell instructed Hill to drag Whitten's body back inside the store, while he looked for the keys to the safe for the money. McDowell found the keys and retrieved a moneybag from the safe.

¶5. Hill concluded his testimony saying that he and McDowell ran across the road into the woods, where they divided the money, and McDowell buried the moneybag. McDowell then threw the shotgun into a pond, where it was later found by law enforcement officers. McDowell and Hill returned to McDowell's house, and McDowell's mother took them to school around 1:00 p.m.

¶6. When McDowell took the stand on his own behalf, his testimony totally contradicted Hill's testimony. McDowell insisted that he had left his .410 shotgun at Hill's house several weeks prior to the incident. Although McDowell agreed that they skipped school, he said he was asleep in a wooded area "on a pine knot" across the road from his house, during the time of the shooting and robbery.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN DENYING PROPOSED JURY INSTRUCTIONS D-1 (A PEREMPTORY INSTRUCTION), D-6 (SELF-DEFENSE) AND GIVING JURY INSTRUCTION C-10 (ELEMENTS OF ARMED ROBBERY).

¶7. "In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State,* 697 So.2d 777, 782 (Miss. 1997)(quoting *Collins v. State,* 691 So.2d 918 (Miss. 1997)). Furthermore, "the general rule is that jury

instructions must be supported by evidence and must provide that the jury must find each element of the crime under the proper standard of proof." ***Turner v. State,*** 721 So.2d 642, 648 (Miss. 1998).

### A. Was McDowell Entitled To A Peremptory Instruction?

¶8. McDowell first suggests that the trial court erred in refusing his peremptory instruction (D-1) which instructed the jury to return a verdict of not guilty of conspiracy to commit robbery in Count I and capital murder in Count II. This Court applies the same standard of review for a denial of a judgment notwithstanding the verdict, a directed verdict and a peremptory instruction. Each challenges the legal sufficiency of the evidence and is tested in a light most favorable to the State. ***McClain v. State,*** 625 So.2d 774, 778 (Miss. 1993). In passing on McDowell's request for a peremptory instruction, the credible evidence consistent with his guilt must be accepted as true, together with any favorable inferences that may be reasonably drawn from that evidence. We are authorized to reverse only where the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty. ***Id.***

¶9. A review of the record before this Court does not reveal that it was so wanting for evidence that McDowell was entitled to a peremptory instruction. Hill's testimony that connected McDowell to the crime and the fact that the .410 shotgun used to kill Whitten belonged to McDowell, provided sufficient evidence to warrant the trial court's refusal of the peremptory instruction.

### B. Was McDowell Entitled To A Self-Defense Instruction?

¶10. McDowell secondly argues that his self-defense instruction (D-6) should have been given. Even though McDowell's theory of his case was that he was not there and he did not commit the crime, he nevertheless requested a self-defense instruction in response to Hill's testimony. However, Hill's testimony provided no credible evidence to support the requested self-defense jury instruction. His only statement which even remotely implies that McDowell acted in self defense was made during the State's direct examination, when the prosecutor asked him to "[t]ell me what Whitten was doing." Hill responded that he was "[j]ust standing there and he took a stop [sic] toward Antonio, Antonio took a step back." Hill continued by saying he went to close the front door and that was when he heard the shot. Even if McDowell was allowed to now change his testimony and say that he was at Whitten's store the day of the shooting, McDowell would still not be able to claim self-defense. "A defendant is not entitled to use deadly force in self-defense based upon a subjective fear of great bodily injury unless it is determined by a jury that this fear is reasonable under the circumstances." ***Walters v. State,*** 720 So.2d 856, 862 (Miss. 1989).

¶11. McDowell relies heavily on ***Dew v. State,*** 748 So.2d 751 (Miss. 1999), where this Court reversed on grounds that the defendant's pre-arming himself did not deter him from receiving a warranted self-defense instruction. ***Id.*** McDowell also relies upon ***Hopson v. State,*** 625 So.2d 395 (Miss. 1993), a case where a drug defendant denied that he sold narcotics, but then asked the trial court for an entrapment instruction. Both these cases are inapplicable to the case at hand.

¶12. McDowell's entire defense and the theory of his case was an alibi defense. He insisted that he was not present in the store the day that Whitten was shot and killed. He did not offer an alibi instruction. His "alternate theory" was only presented by defense counsel in chambers during the process of determining which jury instructions would be given to the jury. The trial court properly refused McDowell's requested self-defense instruction.

*C. Did the Court err in giving the C-10 instruction regarding the elements of robbery?*

¶13. McDowell next suggests that the granting of the Instruction C-10 regarding the elements of robbery was reversible error. McDowell claims that the State failed to prove that he robbed Whitten while he was still alive. McDowell offers no authority to support his proposition that one must be robbed before being killed, in order to have met the elements of robbery. In *Arthur v. State,* 735 So.2d 213, 220 (Miss. 1999), we held that it does not matter whether the taking occurred before or after the murder.

¶14. McDowell also asserts that there was no proof that he carried away or removed any of Whitten's property. However, the statute under which McDowell was indicted proscribes robbery by exhibition of a deadly weapon but does not require proof of asportation. Miss. Code Ann. § 97-3-79 outlines the elements of robbery and states in pertinent part:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....

Miss. Code Ann. § 97-3-79 (2000).

¶15. Asportation, though an element of larceny, is not an element of robbery since robbery may, on the proper facts, be proven by the mere attempt to take the property of another from his person or presence. *Cooper v. State,* 386 So.2d 1115, 1116 (Miss. 1980). This issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION IN LIMINE TO EXCLUDE OR IN THE ALTERNATIVE TO LIMIT INTRODUCTION OF PHOTOGRAPHIC EVIDENCE.

¶16. During pre-trial motions, McDowell presented a motion in limine to either exclude or limit the State's photographic evidence. McDowell argued that the prejudicial value exceeded the probative value of the photographs. There were a total of thirty-nine photographs pertaining to the incident. However, the State only introduced six of them during the trial. The photos admitted included one of Whitten's body as found at the scene, two of the trail of blood that led from the parking lot into the store, two morgue pictures that showed the gunshot wound to Whitten's head and one that showed bruises and abrasions on Whitten's face and legs. These are all probative by showing the crime scene and the cause of death. They also corroborated Hill's confession to Officer Walter Davis, in which he stated that he dragged Whitten's body from the parking lot into the store and that McDowell searched his pockets for the keys.

¶17. The admissibility of photographs rests within the sound discretion of the trial judge. *Griffin v. State,* 557 So.2d 542, 549 (Miss. 1990). Photographs have evidentiary value where they aid in describing the circumstances of the killing and the corpus delicti, where they describe the location of the body and cause of death, and where they supplement or clarify witness testimony. *Westbrook v. State,* 658 So.2d 847, 849 (Miss. 1995)(citing *Williams v. State,* 354 So.2d 266 (Miss. 1978); *Ashley v. State,* 423 So.2d 1311 (Miss. 1982); *Hughes v. State,* 401 So.2d 1100 (Miss. 1981)).

¶18. Because the photographs were more probative than prejudicial in value, the trial court did not abuse its discretion in admitting them into evidence.

### III. WHETHER THE VERDICTS OF THE JURY OF GUILTY OF CONSPIRACY TO COMMIT ROBBERY AND CAPITAL MURDER ARE AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶19. The trial court denied McDowell's post-trial motion for a new trial, or in the alternative, for a judgment notwithstanding the verdict (JNOV). McDowell's assertion that he was entitled to a new trial or a JNOV, actually challenges not only the weight but also the legal sufficiency of the evidence. McDowell recites our standard for reviewing whether a judgment is against the overwhelming weight of the evidence, but fails to show that this standard has not been met.

¶20. This Court reviews a motion for a new trial, which challenges the weight of the evidence, as follows:

> [This Court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice."

*Crawford v. State,* 754 So.2d 1211, 1222 (Miss. 2000)(internal citations omitted). The credibility of a witness is a question for the jury. *Hughes v. State,* 724 So.2d 893, 896 (Miss. 1998)(citing *Jackson v. State,* 614 So.2d 965, 972 (Miss. 1993)).

¶21. On the other hand, we review a motion for a JNOV, which challenges the legal sufficiency of the evidence to support a conviction, under the standard articulated in Issue I above.

¶22. In the case sub judice, McDowell offered no evidence of his own at trial to rebut the State's evidence. He now merely attempts to highlight what he considers inconsistencies in the testimony of prosecution witness Deaigo Hill. Giving the State the benefit "of all favorable inferences that may reasonably be drawn from the evidence," the trial court correctly found that there was ample and sufficient evidence to support the jury verdict of guilty. This issue is without merit.

### CONCLUSION

¶23. The trial court did not err in refusing the proposed peremptory and self-defense instructions nor in giving the instruction as to the elements of robbery over McDowell's objection. McDowell has failed to show a reasonable probability of a different outcome at his trial but for the inclusion of the admitted photographs. McDowell's conviction is based on legally sufficient evidence and is not against the overwhelming weight of the evidence. In light of the foregoing, we affirm the judgment of the Tallahatchie County Circuit Court, First Judicial District.

¶24. **COUNT I: CONVICTION OF CONSPIRACY TO COMMIT ROBBERY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT, WITHOUT THE POSSIBILITY OF PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT II.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY AND GRAVES, JJ., CONCUR. CARLSON, J., NOT PARTICIPATING.**